**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kawasaki Motors Finance Corporation, | No. CV 10-1154-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| J.P. Morgan Chase Bank, N.A., | |
| Defendant. | |

On August 3, 2010, Plaintiff Kawasaki Motors Finance Corporation ("KMFC") filed an Amended Complaint against Defendant J.P. Morgan Chase ("Chase") for Breach of Contract, Promissory Estoppel, Negligent Misrepresentation, and Negligence. (Doc. 33) On August 27, 2010, Chase filed a Motion to Dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 34)  On September 13, 2010, KMFC filed a Response (Doc. 35), and on September 30, 2010, Chase filed a Reply (Doc. 36).  Having reviewed the parties' briefs as well as the applicable law, the Court now enters its ruling.

**I.     Background**

Construed in a light most favorable to KMFC, the Amended Complaint alleges that KMFC provided financing to two dealerships, JCT Wholesale, Inc. and CSJ Management Corp., dba Kawasaki Superstore North (collectively "the Dealerships"), to purchase

Kawasaki products from Kawasaki Motor Corp. (Doc. 33 ¶ 6) As security for the financing, the Dealerships assigned KMFC the rights to four Certificates of Deposit ("CDs") held by Chase totaling $445,000. (Id. at ¶ 8; Ex. A) The Assignment of Certificate of Deposit ("Assignment") explicitly stated that the CDs were to act as security for any current or future indebtedness incurred by the Dealerships. (Id. Ex. A)

An authorized Chase agent executed a "Receipt and Agreement" ("Agreement") for each CD, acknowledging receipt of the assignments and requiring KMFC's approval for any withdrawal from the CDs. (Id. ¶¶ 10, 11; Ex. B) Under the Agreement, Chase

> acknowledge[d] and confirm[ed] that the rights and interests of Kawasaki Motor Finance Corporation ("KMFC") have been duly noted in the officials records of the Bank and that the following legend has been placed on the signature card or other writing evidencing the deposit agreement with the above identified Depositor. "This account has been assigned to KMFC SIGNATURE OF AUTHORIZED REPRESENTATIVE OF KAWASAKI MOTORS FINANCE CORPORATION IS REQUIRED FOR ANY WITHDRAWAL OR TRANSFER."

(Id. ¶ 33; Ex. B). The Agreement further stated that Chase "shall honor the written instructions of KMFC with respect to the above-described deposit account." (Id. at ¶ 12; Ex. B) KMFC alleges that in reliance on the Agreement, KMFC continued to extend credit totaling four million dollars to the Dealerships. (Id. at ¶ 13) KMFC also alleges that it would not have continued to extend credit absent the Agreements and the representations and promises made therein. (Id. at ¶ 14)

Contrary to the provision of the Agreement requiring the signature of a KMFC representative for withdrawal of the CDs, Chase permitted the Dealerships to liquidate and withdraw the CDs in their entirety without KMFC's knowledge or approval. (Id. at ¶ 15) KMFC did not learn of the withdrawal of the CDs until months later, when it initiated contact with Chase regarding the CDs. (Id. at ¶ 16) Following the withdrawal of the CDs, KMFC initiated the present action against Chase.

## II.    Standard of Review

Chase moves to dismiss KMFC's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. When

1 reviewing a motion to dismiss, the Court accepts the allegations in the complaint as true and
2 construes them in the light most favorable to the plaintiff. Sosa v. Hiraoka, 920 F.2d 1451,
3 1455 (9th Cir. 1990). To survive a motion to dismiss, plaintiff's complaint must contain
4 more than "an unadorned, the-defendant-unlawfully-harmed me accusation." Ashcroft v.
5 Iqbal, 129 S. Ct. 1937, 1949 (2009). Yet surviving a motion to dismiss only requires the
6 plaintiff to allege "enough facts to state a claim of relief that is plausible on its face." Bell
7 Atlantic Corp. v. Twombley, 550 U.S. 554, 569 (2007). "A claim has facial plausibility
8 when the plaintiff pleads factual content that allows the court to draw the reasonable
9 inference that the defendant is liable for the misconduct alleged." Id. This plausibility
10 standard "'does not impose a probability requirement at the pleading stage; it simply calls
11 for enough facts to raise a reasonable expectation that discovery will reveal evidence' to
12 prove [the] claim." al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009) (quoting
13 Twombly, 550 U.S. at 556). A claim must be stated clearly enough to give the defendant a
14 fair opportunity to frame a responsive pleading. McHenry v. Renne, 84 F.3d 1172, 1176 (9th
15 Cir. 1996).

16 **III.   Discussion**

17     **A.   Breach of Contract Claim**

18 Chase argues that KMFC's breach of contract claim fails because the Agreements are
19 not supported by consideration, and therefore under Arizona law, do not constitute contracts.
20 Chase asserts that to state a claim for breach of contract, a plaintiff must allege facts
21 demonstrating, among other things, consideration for the purported contract. "To constitute
22 consideration, a performance or a return promise must be bargained for," i.e., "sought or
23 given in exchange for the promise of the other party." Shade v Diethrich,158 Ariz. 1, 8
24 (1998) (citing Restatement (Second) of Contracts § 71 (1981)). Chase maintains that while
25 KMFC alleges that pursuant to the terms of the Agreement, Chase agreed not to permit
26 withdrawal of the CDs without the signature of KMFC's authorized representative, KMFC
27 does not allege that Chase received any consideration for this alleged agreement. Chase
28 argues that the Agreements do not contain any provisions that obligate Chase to do anything

or refrain from doing anything and thus are mere gratuitous promises that do not give rise to contractual obligations.  Chase asserts that KMFC "neither alleges that Chase required [KMFC] to keep the CDs at Chase in exchange for Chase's alleged agreement, nor that [KMFC] even communicated to, much less agreed with, Chase that [KMFC] would leave the CDs at Chase in exchange for Chase's alleged agreement."

Citing Hill v. Chubb Life American Insurance Co., 182 Ariz. 158, 164 (1995), KMFC argues that consideration for Chase's contract is presumed and need not be pled.  See A.R.S. § 44-121 ("Every contract in writing imports a consideration.").  KMFC argues that the issue of consideration in written contracts is typically a fact question for the jury, where the "burden of showing a lack or failure of consideration is upon the party attacking it."  Dunlap v. Fort Mohave Farms, Inc., 89 Ariz. 387, 393 (1961) (reversing trial court's pleading stage dismissal of complaint for alleged lack of consideration).

KMFC also argues that "the consideration for Chase's promises is apparent from the face of the complaint and written contract."  Citing the Restatement, KMFC argues that consideration includes a promise in return for performance to a third party, and points to Chase's promise to require KMFC's approval before allowing withdrawals in return for KMFC's extension of credit to the Dealerships.  See Restatement (Second) of Contracts §71(4) ("The performance or return promise may be given to the promisor or to some other person.").

Chase counters that KMFC has not alleged that it communicated with Chase in any manner and therefore "has not alleged . . . the requisite element of agreement to plaintiff's performance."  However, "constru[ing] the complaint in a light most favorable to [KMFC]," as the court must, see Vasquez v. L.A. County, 487 F.3d 1246, 1249 (9th Cir.2007), the allegations in the Amended Complaint, viewed together with the attached Assignments and Agreements, raise a reasonable inference that Chase agreed to execute the Agreements in exchange for KMFC's extension of credit to the Dealerships.  Accordingly, the Court finds that KMFC has adequately alleged that the Agreements are supported by consideration and

will therefore deny Chase's Motion to Dismiss KMFC's breach of contract claim.

### B.     Promissory Estoppel Claim

Chase argues KMFC's promissory estoppel claim fails as a matter of law for two reasons. First, Chase contends that KMFC "fails to specifically allege what exact promise by Chase it purportedly relied on." Second, Chase contends that any promises contained in the Agreements are not promises at all, "but rather mere statements of past or presently existing facts."

To state a claim for promissory estoppel, KMFC must show "a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promissee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Chewning v. Palmer, 133 Ariz. 136 (1982) (citing Restatement (Second) of Contracts, § 90 (1981)). In other words, KMFC must demonstrate that: (1) Chase made a promise that it reasonably should have expected KMFC to rely on; (2) KMFC relied on that promise; (3) to its substantial detriment. Contempo Const. Co. v. Mountain States Tel. & Tel. Co., 153 Ariz. 279, 282 (App. 1987). To be actionable, the alleged promise must relate "to a situation which [Chase] promises will be true in the future," and not to a mere "past or presently existing state of facts." Tiffany Inc. v. WMK Transit Mix, Inc., 16 Ariz. App. 415, 520 (App. 1972).

Chase argues that certain terms of the Agreements are framed in the past tense: "[T]he rights and interests of [KMFC] *have been duly noted* in the official records of the Bank and that the following legend *has been placed* on the signature card." (Doc. 33, Ex. B (emphasis added)). Chase contends that only the last sentence of the Agreements could arguably be construed as a promise relating to a future event: "The undersigned further acknowledges and agrees that [Chase] shall honor the written instructions of [KMFC] with respect to the above-described account." Id. Chase argues that KMFC "does not . . . allege facts demonstrating that Chase ever broke this purported promise."

KMFC argues that under Arizona law, a "standard of reasonableness" is applied when

- 5 -

1 examining contracts. State ex rel Goddard v. R.J. Reynolds Tobacco Co., 206 Ariz. 117, 120
2 (App. 2003). A standard of reasonableness is appropriately applied here. Although Chase
3 points to sentences in the Agreements that contain past-tense verbs, the key sentence –
4 "signature of authorized representative of Kawasaki Motors Finance Corporation is required
5 for any withdrawal or transfer" – can reasonably be interpreted as a promise by Chase that
6 it would not allow the withdrawal of funds without KMFC's approval from the time the
7 Agreement was executed into the future. Given the language of the agreement stating that
8 Chase would require a KMFC signature, it is reasonable to infer that Chase would not
9 liquidate or release the CDs without an authorized signature, and that KMFC would rely on
10 that promise.

11 Moreover, KMFC has sufficiently alleged that it detrimentally relied on Chase's
12 promise by continuing to extend credit totaling four million dollars based on this promise.
13 (Doc. 33 ¶ 13). KMFC argues that it would not have extended the credit were it not for the
14 promise to bar withdrawal by anyone other than an authorized agent, and thus KMFC's
15 reliance on the promise was to its detriment. Chase broke that promise by allowing the
16 Dealerships to withdraw the funds without a KMFC signature. Accordingly, the Court finds
17 that KMFC has demonstrated sufficient facts to support a claim of promissory estoppel and
18 will deny Chase's Motion to Dismiss KMFC's Promissory Estoppel claim.

19         **C.    Negligent Misrepresentation Claim**

20 Chase alleges KMFC's Negligent Misrepresentation claim fails as a matter of law
21 because it lacks specific factual allegations. Chase points out that "Arizona 'narrowly limits
22 the liability of professional suppliers of information' by following § 552 of the Restatement
23 (Second) of Torts ("Restatement"), which imposes a duty for negligent misrepresentation
24 purposes only upon 'one who, in the course of his business . . . supplies false information for
25 the guidance of others in their business transactions.'" See Merrick Bank Corp. v. Savvis,
26 Inc., 2010 WL 148201, *6 (D. Ariz. 2010); Restatement § 552. To properly allege a claim
27 for negligent misrepresentation, a plaintiff must allege facts demonstrating that: (1) the
28 defendant, in the course of its business, gave incorrect information for the guidance of others

- 6 -

in their business transactions; (2) the defendant intended that plaintiff rely on that information or could reasonably foresee that plaintiff would rely on that information; (3) the defendant failed to exercise reasonable care in obtaining or communicating that information; (4) the plaintiff relied on that incorrect information; (5) the plaintiff's reliance was justified; and (6) the plaintiff's reliance was a cause of damage to the plaintiff. Standard Chartered PLC v. Price Waterhouse, 190 Ariz. 6, 31 (App. 1996) (citing Restatement (Second) of Torts, § 552).

Relying on Kuehn v. Stanley, 208 Ariz. 124 (App. 2004), Chase argues that KMFC fails to allege facts demonstrating that "Chase's intended purpose for providing the [Agreements] related to plaintiff's purported reason for soliciting them." In Kuehn, a home buyer sued a real estate appraiser for appraising the home for an amount that was significantly higher than what it was actually worth. Id. at 126. However, the court was unwilling to uphold a claim of negligent misrepresentation against the appraiser because the loan company sought the appraisal, not the home buyer, and the home buyer was already contractually bound to buy the house, regardless of the appraisal. Id. at 128. In other words, the reason for the appraisal (a condition of the approval of the loan) was not related to the home buyer's use of the appraisal (the home buyer was already contractually obligated to purchase the home), therefore the appraiser did not provide the appraisal "for the guidance" of the home buyer as section 552 requires. Id. at 129.

Here, unlike in Kuehn, Chase's conduct is directly related to the information upon which KMFC relied. Chase explicitly stated in the Agreements that it placed a legend on the signature card requiring KMFC's approval before any withdrawal. (Doc. 33 at ¶¶ 11, 12; Ex. B). KMFC alleges that no such legend was ever placed on the Agreements, and that omission is what led to the withdrawal by the Dealerships. In other words, Chase's conduct (agreeing to place the legends on the Agreement and failing to do so) is related to KMFC's reliance because KMFC alleges that it would not have extended credit to the Dealerships without the guarantee associated with the legends. (Doc. 33 at ¶ 14).

Chase also argues that KMFC fails "even to allege facts demonstrating that Chase was aware of the commercial relationship between plaintiff and JCT" and "does not allege

1 that it extended credit to the Dealership after execution of the [Agreement], let alone in
2 reliance on the [Agreement]." Chase further argues that KMFC fails to allege that it
3 detrimentally relied on the Agreements.

4        Contrary to these assertions, KMFC alleges that Chase executed the Agreements for
5 KMFC's benefit. (Id. at ¶¶ 10-12, 33; Ex. A, B)  The attached Agreements reference the
6 corresponding Assignments of the CDs from the Dealership to KMFC, incorporating the
7 account numbers and deposit amounts. (Id. Ex. A, B) The Assignments describe the
8 commercial relationship between KMFC and the Dealership. (Id. Ex. A)  Further, KMFC
9 sufficiently alleges that it "relied upon [Chase's Agreement] in extending or continuing to
10 extend credit to the Dealership" (Id. ¶ 31, 35; Ex. A) and that such reliance was to its
11 detriment (Id. ¶ 13).

12        Chase points to Merrill Lynch Bank USA v. Wolf, 2010 WL 1416030 at *4 (D. Ariz.
13 April 8, 2010), in which the district court recently dismissed a negligent misrepresentation
14 claim because it "was devoid of factual support and amounted to a mere 'formulaic recitation
15 of the elements of a cause of action.'"  The factual allegations in Merrill Lynch, however,
16 were not described in that case, and therefore cannot be compared to those in the present case.
17 Further, the allegations in KMFC's Amended Compliant, together with the attached
18 Assignments and Agreements, sufficiently satisfy Federal Rule of Procedure 8(a)(2) in that
19 they provide "fair notice" of the nature of the claim and the "grounds" on which the claim
20 rests. Id. at *1.

21        Accordingly, the Court finds that KMFC alleges sufficient facts to support a claim of
22 negligent misrepresentation that is plausible on its face, and Chase's Motion to Dismiss this
23 claim will be denied.

24        **D.**     **Negligence**

25        Chase argues that KMFC's negligence claim fails because KMFC's negligent
26 misrepresentation claim precludes KMFC from asserting a negligence claim. Chase asserts
27 that "[a] party may not pursue a claim for negligence separate and distinct from a negligent
28 misrepresentation claim." See Kuehn, 208 Ariz. at 128.  KMFC cites Shacknai v Mathieson,

2009 WL 4673767, *3 (D. Ariz. 2009), in which the district court dismissed a negligence claim as duplicative of a negligent misrepresentation claim, but allowed a separate negligent hiring claim to move forward.  KMFC points out that the court in Shacknai found that the negligent hiring claim was not duplicative of the negligent misrepresentation claim because it did not involve the "representations or omissions" central to the negligent misrepresentation claim.  Id.

KMFC argues that its negligent misrepresentation claim relates to Chase's *representations*, whereas its negligence claim relates to Chase's *conduct* that breached its duty of care.  With respect to its negligent misrepresentation claim, KMFC alleges that Chase falsely and negligently represented that it placed a legend on the CD signature card requiring KMFC's approval before permitting withdrawals.  (Doc. 33 ¶ 31).  KMFC argues that, in contrast, its negligence claim is not based upon a representation, but rather separate conduct by Chase that relates to a duty of care owed to KMFC.  KMFC contends that Chase breached its duty "to properly note the CD Assignments in its records, to ensure that the CDs would not be improperly withdrawn without KMFC's authorization, and to notify KMFC of the improper withdrawal of the CDs." (Doc. 33 ¶¶ 38, 39).  Thus, the negligence claim involves conduct distinct from Chase's alleged false representations regarding the signature card.

Chase responds that even if KMFC could bring a separate negligence claim, it nevertheless owed no duty to KMFC.  Chase points out that "[a]bsent some duty, an action for negligence cannot be maintained." Gipson v. Kasey, 214 Ariz. 141, 143-44 (2007).  Chase argues that banks have no duty to non-customer third parties unless a "special relationship" exists between plaintiff and the bank.  See Kesselman v. Nat'l Bank, 188 Ariz. 419, 422 (App. 1996).  Kesselman, however, involved claims by third party investors whose escrow company was a customer of the bank.  Here, the duty alleged by KMFC exists directly between KMFC and Chase pursuant to the Agreements – there is no third party.  KMFC alleges that Chase owed a duty "to properly note the CD assignments in its records to ensure that the CDs would not be improperly withdrawn without KMFC's authorization, and to notify KMFC of the improper withdrawal of the CDs." (Doc. 33 ¶¶ 38, 39)

Because KMFC's negligence claim is not based upon the representations relied upon for the negligent misrepresentation claim, but rather is based upon Chase's conduct, and because KMFC has alleged sufficient facts to establish a duty of care, Chase's motion to dismiss the negligence claim will be denied.

Based on the foregoing, the Court concludes that KMFC's Amended Complaint alleges enough facts to state claims for breach of contract, promissory estoppel, negligent misrepresentation, and negligence that are plausible on their face," Twombly, 550 U.S. at 570, to warrant the case to proceed to discovery. Accordingly,

**IT IS ORDERED** denying Chase's Motion to Dismiss. (Doc. 34).

DATED this 30th day of March, 2011.

_____
Mary H. Murguia
United States District Judge